```
 1                    IN THE UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF ARKANSAS
 2                           FORT SMITH DIVISION

 3

 4   UNITED STATES OF AMERICA,       )
                                     )
 5              Plaintiff,           )
                                     )
 6      vs.                          ) Case No. 2:09CR20074-001
                                     )
 7   JACOB LOGAN STONE,              ) Fort Smith, Arkansas
                                     )
 8              Defendant.           )

 9

10                              ---o0o---

11            TRANSCRIPT OF SENTENCING PROCEEDINGS
        BEFORE THE HONORABLE ROBERT T. DAWSON, USDC JUDGE
12                           JULY 13, 2010

13                              ---o0o---

14

15                   A P P E A R A N C E S

16
     For the Plaintiff:           MS. KYRA JENNER
17                                Assistant United States Attorney
                                  P. O. Box 1524
18                                Fort Smith, Arkansas   72902

19

20   For the Defendant:           MR. KEITH KANNETT
                                  Law Offices of Craig L. Cook
21                                319 North 8th Street
                                  Fort Smith, Arkansas 72902

22

23   REPORTED BY:

24   RICK L. CONGDON, RMR, FCRR
     Federal Official Court Reporter
25   P. O. Box 8493
     Fort Smith, Arkansas   72902
       PROCEEDINGS RECORDED STENOGRAPHICALLY; PRODUCED VIA C.A.T.
```

```
 1                          ---o0o---
 2            SENTENCING PROCEEDINGS OF JULY 13, 2010
 3                          ---o0o---
 4            THE COURT:  Good morning again, Miss Jenner,
 5   Mr. Kannett.
 6            MR. KANNETT:  Good morning, Judge.
 7            MS. JENNER:  Morning, Your Honor.
 8            THE COURT:  We're here today in connection with the
 9   sentencing in the case of United States of America versus Jacob
10   Logan Stone.  Morning, Mr. Stone.
11            THE DEFENDANT:  Yes, sir.
12            THE COURT:  Let the record reflect that the Defendant
13   is present with his attorney.  Mr. Kannett, in connection with
14   this proceeding, sir, it will be necessary to take some
15   testimony from your client.  Do you have any objection to his
16   being sworn?
17            MR. KANNETT:  No, Your Honor.
18            THE COURT:  If you'll stand, sir, and raise your right
19   hand and face the clerk.
20       (Defendant sworn.)
21            THE COURT:  Fine.  You may be seated, but speak into
22   that microphone, if you would.  Would you state your full name,
23   sir?
24   A   My name is Jacob Logan Stone.
25            THE COURT:  Mr. Stone, are you taking any prescription
```

1  medication at present?
2  A  Yes, sir, I am.
3       THE COURT:  Are you taking anything that you believe
4  affects your reasoning ability or your judgment in any way?
5  A  No, sir.
6       THE COURT:  My records reflect, Miss Jenner,
7  Mr. Kannett, he's been in federal custody I know it looks like
8  since I know -- I've got two dates.  I've got December 10 of
9  last year and December 11, but I believe there were state
10 charges and he was confined prior to that time, was he not?
11      MR. KANNETT:  That's correct, Judge.
12      THE COURT:  Do you know what that date was?
13      PROBATION OFFICER:  Your Honor, we were showing
14 October 7th on the arrest date in Franklin County.
15      THE COURT:  What has happened to those state charges?
16      MR. KANNETT:  Those charges have been dismissed at
17 this time, Your Honor.
18      THE COURT:  Mr. Stone, have you had an opportunity to
19 review the Pre-sentence Investigation Report prepared by
20 Probation, and which is dated March 23, 2010, as well as the
21 Addendum and the revision which is dated April 16, 2010?
22 A  Yes, Your Honor.
23      THE COURT:  And the same question to you, Mr. Kannett;
24 have reviewed both of those documents?
25      MR. KANNETT:  Yes, Your Honor.

1             THE COURT:  Miss Jenner?
2             MS. JENNER:  I have, Your Honor.
3             THE COURT:  There were no objections, but with the
4    understanding that I'll hear any objections or concerns either
5    side may have, is there any reason why both the Pre-sentence
6    Investigation Report and the Addendum cannot now be filed and
7    made a part of the record in this matter?
8             MR. KANNETT:  There's no reason those cannot be
9    entered.
10            MS. JENNER:  No, Your Honor.
11            THE COURT:  The Court had also tentatively approved
12   the Plea Agreement.  Any reason why the Plea Agreement could
13   not finally be accepted and filed and made a part of record?
14            MR. KANNETT:  No, reason it can't be filed, Your
15   Honor.
16            MS. JENNER:  No, Your Honor.
17            THE COURT:  I'd ask that that likewise be filed.  Are
18   there any issues with reference to -- are there any factual or
19   legal issues in dispute, anything that either side believes we
20   need to hear any testimony about or concerning?
21            MR. KANNETT:  There's no factual or legal issues in
22   dispute, Your Honor.
23            MS. JENNER:  Nothing from the government, Your Honor.
24            THE COURT:  Miss Jenner, do you want to identify your
25   folks at your counsel table for us for the record?

1        MS. JENNER: Yes, Your Honor. May I introduce Heather
2   Patton, the Prosecuting Attorney from Franklin County.
3   Franklin County referred this investigation to the United
4   States Attorney's Office, and Miss Patton's office dismissed
5   the state charges in lieu of the federal prosecution before
6   Your Honor. Sergeant Limbocker from the Franklin County
7   Sheriff's Office was the initial investigator assigned to
8   gather the evidence in this case and he referred the
9   investigation to Special Agent Tim Akins from the Federal
10  Bureau of Investigation.
11       THE COURT: Fine. It's our privilege to have all of
12  you, I assure you. This Court and all courts, Mr. Stone,
13  operated under the Federal Sentencing Guidelines for over 20
14  years believing that they were both mandatory and
15  constitutional, and the U.S. Supreme Court in three decisions,
16  two of them in early 2005, one in late 2007, said we were
17  wrong, because the Guidelines were unconstitutional because
18  they ran afoul of the Sixth Amendment to the United States
19  Constitution. Those opinions, however, and there were three of
20  them altogether, stated that although the Guidelines were
21  unconstitutional, that, nonetheless, district courts, such as
22  this court, would continue to refer them and be advised by them
23  in arriving at sentences for defendants. We also were
24  instructed to refer to the sentencing factors reflected in 18
25  USC 3553(a) in imposing a sentence.

Case 2:09-cr-20074-PKH   Document 22    Filed 03/27/14   Page 6 of 18 PageID #: 89
                                                                              6

1           The statutory penalties in your case, sir, would provide
2    for custody of not less than five years nor more than 20 years,
3    supervised release of not less than five years up to life, a
4    lifetime of supervised release.  There's no probation
5    authorized.  There could be a maximum fine of $250,000.  There
6    could be a mandatory special assessment of a hundred dollars.
7           Under the Guidelines, it's the Court's view that the total
8    offense level would be at 37 and the criminal history category
9    is at one, and under those numbers the Guidelines would
10   recommend, suggest, and advise a sentence of custody of 210 to
11   240 months, and the 240 months is imposed because  that's --
12   anything above that, and there was -- apparently the Guidelines
13   went above that, but it runs -- it gets above the maximum
14   penalties authorized by statute, does it not, Mr. Hudson?
15              PROBATION OFFICER:  That's correct, Your Honor.
16              THE COURT:  And the Guidelines would call for
17   supervised release from five years up to the rest your life.
18   Again, there is no probation authorized, and a fine in the
19   range of $20,000 to $200,000, and also a mandatory special
20   assessment of a hundred dollars.  Again, those Guidelines are
21   only advisory and I can sentence you to anywhere within the
22   previously-stated statutory range, but I'm going to listen to
23   your attorney now, Mr. Stone, to make such comments as he deems
24   appropriate as to what he believes an appropriate sentence for
25   you would be in this matter.  When he finishes, if there's

1  anything further you wish to add to what he's stated, you
2  certainly can.  You don't have to say anything, and I assure
3  you it will not be held against you, but if you would like to
4  be heard, the Court would be pleased to hear you.
5      I would also ask, Mr. Kannett, that in addressing the
6  Court, that you call any special attention to anything that you
7  think I need to direct to 3553(a), any of those provisions.
8      I assure you I have reviewed those and I'll have those in
9  mind throughout this proceeding, but if there's any portion of
10 3553(a) that you think the Court needs to particularly address,
11 now would be the time for you to underscore it.  Go ahead, sir.
12         MR. KANNETT:  Thank you, Your Honor.  Let me begin by
13 saying that I myself am from Ozark, and that's the Defendant's
14 hometown, and the Defendant's family, I'm very familiar with
15 them.  I graduated high school with his oldest brother, and the
16 Stone family has been a well-respected family in the community
17 for years.  His parents are long time educators, involved with
18 the school.
19     I think there are specific factors here that the Court
20 should be aware of that make Mr. Stone distinctly different
21 from many people in his situation.  You are going to hear some
22 testimony from Mr. Stone that he does have some problems, and
23 that he does need some help.  He understands that he's done
24 wrong.  However, he's in the unique position of having a lot of
25 secure family network that is going to be there to support him

1    and to help him, and I believe he is a prime candidate to be
2    rehabilitated.  He is excited about the possibilities of being
3    able to access some programs while incarcerated to address some
4    of the problems that he does have.  He has a yearning to change
5    some of the problems that he has.  He has a strong faith,
6    religious faith that I think will help him be able to change.
7         Also, the age of Mr. Stone.  He's a young man.  And I think
8    after hearing his testimony, the Court may be inclined that a
9    possible sentence of -- I would suggest a possible sentence of
10   no more than 10 years of incarceration, and then supervision at
11   the Court's discretion after that time, long enough for him to
12   seek some treatment but not long enough to live his entire life
13   inside of the prison system, Judge.
14        At this time I'm going to turn this over to Mr. Stone and
15   let him address the Court.
16             THE COURT:  Sure.  Yeah, Mr. Stone.
17   A    Your Honor, since I was arrested back in October of last
18   year, I've had a chance to get closer with my family.  I've
19   realized even through the past they have helped me through many
20   times, but this was the one time they really did sit with me,
21   and I knew for a fact that no matter what I did in my life,
22   they were always going to be there for me, and, in fact, one of
23   the things I've had to deal with over the past few years have
24   been anger issues also, and it was kind of ironic.  My mom sent
25   me a spiritual book, and I was looking at the reading this

1  morning, and it talked about how anger is not something that
2  you can put judgment on towards anybody else.  You have to
3  accept responsibility for your own actions.  And that is
4  something I feel like I need to do.  I have made mistakes in
5  the past.  I know that several of these young children that
6  were in these images and these videos were harmed.  I may have
7  not personally done it myself, but at some point in time they
8  were harmed, and I apologize for looking at those, and I want
9  to accept responsibility.
10      I do believe, as Mr. Kannett said, I am a young man.  I'm
11 only 25 years old and I just don't feel like too much time
12 incarcerated would be something that would really benefit me in
13 any way.  Yes, I do want therapy.  I want to go through rehab
14 to get over with some of these problems.  I want to actually
15 look at some other problems and all of that that I have, some
16 mental issues that I feel like I've had problems with in the
17 past.  I've had some psychologists that believe I may be
18 autistic and I would like to be looked into with that.  It's
19 just something that I want the Court to be made aware of, that
20 I know what I did was wrong.  I have a very good spiritual
21 belief, especially over the past few months while I've been in
22 jail, and I believe that no matter what this Court decides, it
23 will be in my best interests.  But I just ask they look forward
24 to not just myself but my family, especially with my parents
25 being at their age.  I know they don't have much time, God

1  forbid, but I know it's something that I want to make sure that
2  when I get out, I'll be able to sit there and hug them. It may
3  be for a short time, but as long as I just know I get a chance
4  to spend time with them and the rest of my family, I'd greatly
5  appreciate it, Your Honor. Thank you, Your Honor.
6        THE COURT: Thank you, Mr. Stone. Miss Jenner?
7        MS. JENNER: Your Honor, Mr. Stone is looking at an
8  advisory range, as the Court is well aware, of 210 months to
9  262, but because of the negotiated plea in this case, and I
10 credit the wise counsel that Mr. Stone has, Mr. Kannett, they
11 capped any potential exposure to a penalty at 240 months, and
12 that is the penalty that the government would ask be imposed.
13    This case is different from several cases the Court sees
14 because this does not involve simply looking at illegal images.
15 It is an aggravated case because of Mr. Stone's sharing those
16 illegal images with juvenile males that were members of the
17 Ozark community, and I specifically draw the Court's attention
18 to paragraphs 15 and 16 of the Pre-sentence Report where
19 Mr. Hudson points out for the Court that the images that Mr.
20 Stone consumed for his own use he distributed to others, not
21 like-minded adults, Your Honor, but juveniles, and that is a
22 fact that asks the Court to protect the public which is one of
23 the factors under 3553(a).
24    Mr. Stone sent an image to a 16-year-old boy, not one
25 image, but several images. He also sent images of these minor

1  males involved in sexually-explicit conduct to yet another
2  individual that Special Agent Akins was able to identify.
3       Your Honor, lifetime supervised release is one other way
4  that the Court can help meet the factors in 3553(a) of
5  protecting the public and I would ask the Court to consider an
6  imposition of lifetime supervised release.
7       He will benefit from the counseling that the Bureau of
8  Prisons offers for what they call The Sex Offender Management
9  Program.  He may go to Buckner, North Carolina, if he is
10 willing to avail himself of the programs there, but, again, he
11 has some control over that, because he may wish to be placed
12 regionally to be closer to his family, which is a very
13 important support for him here.
14      I recognize the Court has a youthful offender in front of
15 him, but I would also point out to the Court that Mr. Stone had
16 this problem made known to his family, to law enforcement, and
17 to the judicial system when he was a juvenile and could not
18 seem to get ahold of his problem then, when he did have an
19 opportunity to get counseling, to get professional treatment.
20 For whatever reason that I cannot begin to explain to the
21 Court, that appears to have been swept under the rug at a
22 disservice to Mr. Stone himself and as well as to the community
23 and to these juveniles who received these offending images.
24      He comes back before the Court at age 25 after admitting
25 that he's collected these images for years, and that is in

1   paragraphs 13 and 14 where he admitted to Deputy Limbocker that
2   he had done this, meaning collected these images for years,
3   that he did not seek help but continued to seek out child
4   pornography, and that not only did he keep it for his own
5   consumption, but admitted sharing it via the internet which
6   indeed spreads the harm and, again, calls out for the Court to
7   fashion a sentence to protect the community.  And I would ask
8   that the Court impose a sentence of 240 months.  Thank you,
9   Your Honor.
10             THE COURT:  I have -- Mr. Kannett, anything in
11  response or --
12             MR. KANNETT:  No, Your Honor.
13             THE COURT:  I have reviewed the file in some detail.
14  It's of concern for the Court.
15     First of all, I know Mr. Stone has a very supportive family
16  in this matter and that's important.  It is also at the lowest
17  criminal history category in this matter.  I'm also concerned
18  that the Guidelines are stated to be in excess of even what the
19  Congress has authorized for the maximum penalties in the
20  matter.  I think the Guidelines were properly computed and I
21  think that sentence would speak for itself and there may be no
22  reason to depart from those Guidelines.  However, under
23  3553(a), I can vary that sentence and consider several factors
24  to impose a sentence in addition to the ones that I have
25  already discussed.

1       He also is age 25.  He is a -- he is a young man.  I
2   also -- I think he probably can get treatment and would also --
3   I'm probably going to put him on a lifetime of supervised
4   release in this matter, but having said that, I intend to vary
5   this sentence.
6       I intend to impose a sentence of 150 months custody to be
7   followed by a lifetime of supervised release.  I'm going to
8   find that you do not have the ability to pay a fine within the
9   Guideline range.  I am, however, going to impose a fine of
10  $5,000 -- there's no interest that affixes with that -- and a
11  special assessment of a hundred dollars.
12      Mr. Kannett, any objection to the Court's stated intentions
13  over and above what you've already stated?
14          MR. KANNETT:  No, Your Honor.
15          THE COURT:  Miss Jenner?
16          MS. JENNER:  No, Your Honor.
17          THE COURT:  If you'll stand then, Mr. Stone, with your
18  attorney.
19      Jacob Logan Stone, sir, you are hereby committed to the
20  custody of the United States Bureau of Prisons to be imprisoned
21  for a term of 150 months.
22      Upon your release from imprisonment, you are going to be
23  placed on supervised release for the rest of your life.  You
24  will, sir, within 72 hours after you are released from
25  imprisonment, report in person to the nearest U.S. Probation

```
 1    Office in the district where you are when you are released.
 2         While you are on this supervised release, you are not to
 3    commit any federal, state, or local crime, and you are
 4    henceforth forever, sir, prohibited from possessing a firearm
 5    or any other dangerous device.  You are also not to possess a
 6    controlled substance, and you'll comply with the mandatory
 7    drug-testing provisions of 18 USC 3583(d).
 8         You'll also submit to any means utilized by Probation to
 9    track your whereabouts and location at any time, and that will
10    be at their complete discretion.
11         You also, sir, are to have no unsupervised contact with
12    minors in this matter.
13         You'll also submit to any inpatient or any outpatient
14    mental health evaluation, counseling, testing and/or treatment
15    with an emphasis on sex offender treatment as deemed necessary
16    and appropriate and as directed by the probation office.
17         You also, sir, are not to have access to the internet from
18    any location without the expressed, prior approval of the
19    Probation Office.
20         I'm also ordering you not to have access to the internet at
21    your place of residence.
22         You'll also cooperate with any search  by Probation of your
23    person, residence, vehicle, place of employment, as long as
24    it's conducted in a reasonable manner based upon a reasonable
25    suspicion of a violation of one of your terms of your
```

```
 1   supervised release.
 2       I'm ordering you to pay a fine of $5,000.  There's no
 3   interest that affixes with that.
 4       During incarceration, you'll make payments of not less than
 5   $25 per quarter or 10 percent of your quarterly income,
 6   whichever is greater.
 7       During your supervised release any amount that remains
 8   unpaid, you'll make payments of not less than 10 percent of
 9   your net monthly household income, but in no event less than
10   $100 per month.  Again, there is no interest, and I'm ordering
11   you to pay the special assessment of a hundred dollars.
12       Mr. Kannett, sir, any objection to why the sentence should
13   not be imposed as stated?
14           MR. KANNETT:  No, Your Honor.
15           THE COURT:  Miss Jenner?
16           MS. JENNER:  No, sir.
17           THE COURT:  That then, sir, is your sentence, 150
18   months custody to be followed by a lifetime of supervised
19   release, a $5,000 fine, and a hundred dollar special
20   assessment.
21       You have an absolute right, Mr. Stone, to appeal this
22   sentence I've just just imposed, but if you intend to appeal,
23   sir, your Notice of Appeal should be filed within 14 days.
24       I'm also going to recommend that you be permitted to
25   participate in and enroll and partake of any treatment programs
```

1   that may be available in the federal system, and there's some
2   good ones, and I hope you will do that so when you do come out,
3   you need to -- you are going to be on a lifetime of supervision
4   and you'll be watched extremely closely, so you need to get
5   yourself as squared away as you possibly can.
6       Ms. Jenner, anything further on the part of the government?
7           MS. JENNER:  No, sir.
8           THE COURT:  I think we need to maybe dismiss some
9   additional counts, do we not?
10          MS. JENNER:  Yes.  We would dismiss the counts as
11  stated in the Plea Agreement.
12          THE COURT:  Yeah.  The Court will dismiss Counts I
13  through V and VII through XV.
14      Miss Jenner, anything further?
15          MS. JENNER:  Nothing, Your Honor.
16          THE COURT:  And, again, we appreciate having the
17  visitors from Franklin County.
18      Mr. Kannett, good having you, sir.  Anything further on the
19  part of the defense?
20          MR. KANNETT:  No, Your Honor.
21          THE COURT:  Mr. Stone, no one's given up on you.
22  You've had the benefit of some good representation in this
23  matter.  You've got a very supportive family.  You are a young
24  man.  You've received a substantial sentence, but not as long
25  as could have been imposed, and I hope you know that.  I hope

1  you'll take advantage of this and get yourself squared away,
2  and we look forward to receiving you back into society, but you
3  are on this lifetime of supervision and your attorney and
4  Probation will explain that to you.  But you need to make sure
5  that we don't bump into each other in this type of setting
6  again, but best of luck to you, sir.
7  A    Thank you, Your Honor.
8       (End of proceeding.)

C E R T I F I C A T E

**State of Arkansas** )
)
**County of Sebastian** )

    I, Rick L. Congdon, a Registered Merit Reporter, and Official Court Reporter for the United States District Courts, Western District of Arkansas, do hereby certify that the foregoing transcript, taken before me at the time and place herein designated, consisting of pages 2 through 17, was taken down by me in machine shorthand and then transcribed via computer either personally or under my supervision and that this transcript is a true, correct, and complete transcript of said proceedings as reflected herein.

    Signed this 27th day of March, 2014, in the City of Fort Smith, County of Sebastian, State of Arkansas.

*/s/ Rick L. Congdon*
RICK L. CONGDON, RMR, FCRR
OFFICIAL COURT REPORTER
U. S. DISTRICT COURTS
WESTERN DISTRICT OF ARKANSAS