UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA )
                PLAINTIFF )
                          )
VS.                       )     Case Number: 2:09-CR-20074-RTD
                          )
JACOB LOGAN STONE         )
                DEFENDANT )

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
AUG 10 2017
DOUGLAS F. YOUNG, Clerk
By
        Deputy Clerk

### BRIEF IN SUPPORT OF MOTION TO MODIFY TERMS AND CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 3583(e)(2)

There are two conditions, conditions 2 and 4 that I am hoping the court will rule on in my favor in order to clarify and/or amend. They are listed below.

#### Special Condition 2: No Contact with Minors

This is a common condition set forth against nearly all sex offenders. I have no problem with this condition as it confirms fully to the provisions of 18 U.S.C. § 3553(a). However, I am simply asking the court to modify it to reflect common everday occurrances that will occur with minors in public places. This simply includes encountering minors at restaurants, retail establishments and others. I am asking the court to modify the condition to read as such or in a similar term:

**Special Condition 2: The defendant shall have no unsupervised contact with minors, with the exception of those encountered during everyday activities in public places.**

#### Special Condition 4: Internet Access

The condition reads as followed: The defendant shall not have access to an internet-connected computer or any device with internet capibilities or access the internet from any location without prior approval from the probation office and

for a justified reason. The defendant shall not have internet access at his residence.

The condition is too restrictive based on the conditions set forth in 18 U.S.C. § 3553(a). It states that "a sentence imposed shall be sufficient, but not greater than necessary."

First off, the last sentence of this condition does not even give authority to the probation office. Since I am on lifetime supervised release, that means I can **NEVER** have internet access at my place of residence for the remainder of my life.

Since my sentencing in 2010, technological changes have advanced so much that internet access is a part of life now.

> "The World Economic Forum citing research says that by the early 2020s the Internet of things will consist of 50 billion object using one trillion sensors to collect every imaginable piece of data [on] us every second of the day. From our cars to our refrigerators, from doorbells, to devices implanted in our bodies. From our shoes on some people's feet to the light bulbs and their lamps." <u>Fareed Zakara: GPS</u>. CNN. 16 Jul. 2017.

In fact, according to the Federal Communications Commission, the number of fixed broadband connections in the U.S. has risen by 38.9 million, or 80% from 2011 to 2015. At this rate, that is an increase of about 7.78 million connections per year, not including wireless connections, which is growing at an even larger exponential rate.

Using this estimate, in 2020, there would be 126.4 million fixed broadband connections in America, an increase of 160% since 2011.

As mentioned from a piece on CNN earlier, automobiles, televisions, thermostats, refrigerators and even toilets are internet capable of some sort. Therefore, are We banned from

-2-

having access to a warm living environment or adequate facilities to use the restroom or even the ability to have clean clothing?

This year, 2017, is not the same as 2010 and 2020 will be even more technologically advanced than what we have seen in the last few years.

In addition, in 2015, the FCC ruled that broadband internet is a utility. (2015 FCC LEXIS 731 F.C.C. 2015). This was even upheld by the D.C. Circuit United States Telecom Association v FCC, 825 F.3d 674. (D.C.D.C. 2016).

Therefore, I should be entitled to the use of this utility. If a drug defendant is caught using electricity to grow marijuana plants, do they lose their access to power or even have it restricted? The answer is **NO!**

It is the stigma of sex offenders being the "worst of the worst" that simply imposes this condition on the majority of non-contact sex offenders, even though it is in violation of 18 U.S.C. § 3553(a).

Also, I live in a town of approximately 3,800 people. While several businesses offer "Wi-Fi" access, there is only three places that I am aware of that offer computer and internet access. They are the K-12 public school district, the local university and the public library.

I am banned from the school district and unless I am a student at the university, this option is implausible as well. This leaves only the public library as an option.

According to Franklin County Librarian Nancy Davis, there were approximately 35,000 visitors to the library in 2016.

While no accurate counts were kept on the ages, according to Davis and other members of the library board, approximately 40% of the visitors were under the age of 18. Therefore, if the library was open Monday through Friday and closed on all federal holidays, there were 250 work days in 2016. Thus, using the estimate of 40% of 35,000 visitors, there were about 14,000 minors to visit the library in 2016. If you take 14,000 and divide it by 250, that's an average of 56 minors per day.

My question is, if the purpose of putting an internet restriction on me is to protect the public, why am I being forced to go to a place where this many children congregate on a daily basis?

A simpler and even safer solution for the public is to allow full internet access (within legal means of course) and force me to install monitoring software on my computer and force me to abide by the random searches as notated in special condition 5.

## Term of Supervised Release

Supervised release for life is in violation of 18 U.S.C. § 3553(a) and the United States Constitution's eighth amendment ban on cruel and unusual punishment.

According to 18 U.S.C. § 3583, a sentencing court can impose a term of supervised release to serve after completing a term of imprisonment. In fact, in nearly all sex offense cases, this is a mandatory requirement that calls for a term anywhere from five years to life. The majority receive lifetime supervision simply because the court "claims" it is to protect the public

from further crimes of the defendant.

However, according to my Statement of Reasons (Page 3, Section VI, subsection C), the reason(s) marked for the sentence imposed outside the advisory guideline system were marked as "the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)" as well as "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A)).

Therefore, the sentencing court didn't feel like I was a further risk to the community after my release from prison. In fact, at sentencing, the court stated that the guideline for child pornography was too harsh.

> "I'm also concerned that the Guidelines are stated to be in excess of even what the Congress has authorized for the maximum penalties in the matter." (Doc. 22, page 12.

Furthermore, the court goes on to state:

> "I'm probably going to put him on a lifetime of supervised release in this matter, but having said that, I intend to vary this sentence." (Doc. 22, page 13).

How can a judge say in one sentence that the guidelines were too harsh, state on the record he intended to vary the sentence, while specifically talking about supervised release and at the same time telling the public that 18 U.S.C. § 3553(a)(2)(C) ("to protect the public from further crimes of the defendant"). This is all at the same time the prosecution sought lifetime supervision in the first place. (Doc. 22, page 10).

In addition, supervision for the remainder of your natural

life has been ruled to be unconstitutional by the United States Supreme Court in Weems v United States, 217 US 349, 54 L ed 793, 30 S Ct 544 (1910).

As McCall Dodson of the Southern Center of Human Rights has noted, the longer someone is on probation or parole, and the more conditions you have, the more likely it is that they will violate. This created the obvious impression that supervised release is nothing more than a way to continue to control releasees after the state's hold on them should end. Extended terms of release and onerous conditions are inhibition, not help. Yet, the courts continue to pile them on.

## Conclusion

In closing, I am again asking the court to grant me the proper relief that is due to me by modifying the terms and conditions of my supervised release.

1. Modifying special condition 2 to include a statement that allows interactions with minors during everyday occurrances in public places.

2. Modifying special condition 4 by removing the internet ban and replacing it with monitoring and filtering software, along with random searches.

3. Modifying the lifetime term of supervised release to a finite term of years, in order to allow me adequate chances to reintegrate back into society.

Respectfully Submitted this 7th day of August_____, 2017.

*/s/ Jacob Logan Stone*
Jacob Logan Stone
Register Number 09849-010
MCFP Springfield
P.O. Box 4000
Springfield, MO 65801

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing <u>Motion to Modify Terms and Conditions of Supervised Release and Supporting Brief</u> was placed in the prison legal mail box at <u>MCFP Springfield, MO</u> for delivery by United States Mail, first-class postage prepaid, this __7th__ day of __August__, 20__17__, and was properly addressed to the following:

<u>U.S. District Court</u>
<u>30 South 6th St.</u>
<u>Room 1038</u>
<u>Fort Smith, AR 72901</u>

Under the penalty of perjury under Title 28 USC 1746

Dated: 8-7-17

Respectfully submitted,

*[signature]*

Name: Jacob Logan Stone
\# : 09849-010
Addr: MCFP Springfield
P.O. Box 4000
Springfield, MO 65801