IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF ARKANSAS

FORT SMITH DIVISION

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Mar 25, 2020
OFFICE OF THE CLERK

JACOB LOGAN STONE, )
       PETITIONER )
V )   CASE NO. 2:09-CR-20074
UNITED STATES OF AMERICA, )
       RESPONDENT )

### MOTION TO MODIFY TERMS AND CONDITIONS OF SUPERVISED RELEASE

Comes now, Jacob Logan Stone, pro se Petitioner, requesting that this honorable court modify the terms and conditions of his supervised release as certain conditions are contradictory, overbroad, raise First Amendment concerns and deprive him of more liberty than necessary to deter crime, protect the public, and rehabilitate the defendant under 18 U.S.C. § 3583(d)(2).

### I. Background

On December 9, 2009, Stone was charged in the Western District of Arkansas with a fifteen-count indictment charging him with thirteen counts of Receipt of Visual Depictions Involving the Sexual Exploitation of a Minor in violation of 18 U.S.C. § 2252(a)(2) and two counts of Distribution of Visual Depictions Involving the Sexual Exploitation of a Minor in violation of 18 U.S.C. § 2252(a)(2).

On February 4, 2010, Stone pleaded guilty to count six of the indictment charging him with distribution and dismissing the remaining fourteen counts.

On July 13, 2010, Stone was sentenced to 150 months imprisonment followed by lifetime supervised release with five special conditions.

On August 10, 2017, Stone filed a motion under 18 U.S.C. § 3583(e)(2)

requesting modification of certain conditions of his supervised release. This court denied that motion on August 23, 2017. Stone timely filed an appeal with the Eighth Circuit Court of Appeals and that was denied and the Supreme Court denied certiorari as well.

Stone is now, back in front of this court five months from his release from imprisonment, requesting this court to consider certain special conditions once again.

## II. Jurisdiction and Standard of Review

The District Court has jurisdiction under 18 U.S.C. §§ 3231 and 3583(e). Since Stone did not object to any of the conditions at sentencing, this court can only review for plain error, United States v Brown, 428 Fed. Appx. 664, 666 (8th Cir. 2011). Courts have also insisted on "some evidence" that the special conditions imposed are "tangibly related" to the goals of supervised release, United States v Voelker, 489 F. 3d 139, 144 (3rd Cir., 2007); see 18 U.S.C. § 3583(d).

## III. The special conditions are not sufficiently tailored.

There are three factors that 18 U.S.C. § 3553 states must be taken into consideration when imposing special conditions of supervised release. They include that the sentence imposed

(1) is resonably related to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a).

Stone argues that special condition four, which reads "[t]he defendant

shall not have access to an internet-connected computer or other device with internet capabilities or access the internet from any location without prior approval by the probation office and for a justified reason. The defendant shall not have internet access at his residence" and special condition five, which reads "[t]he defendant shall cooperate with any search by the probation office of his person, residence, workplace, vehicle, to include the search of computers, conducted in a reasonable manner based on reasonable suspicion of evidence of violation of a condition of supervised release" are both contradictory and more restrictive than necessary as well as that the lack of tailoring raise First Amendment concerns.

### A. The conditions are contradictory.

In special condition four, it states that Stone is allowed "access to an internet-connected computer or other device with internet capabilities" with approval from the probation office, but however, cannot access it at his residence. So does this still allow Stone to access the internet at home or even have access to an internet capable device with approval from his probation officer or is it a lifetime ban completely? The fact that Stone's release residence has an internet connected alarm system, smart electric meter and certain appliances that are Wi-Fi capable shows that ten years after these conditions were imposed, technology has changed dramatically and is part of everyday life.

So does this mean that Stone cannot disable or enable the alarm system that protects him and his family? Can he not do his laundry or even turn on a light switch? Can he watch satellite television due to the fact that on-screen guide uses an internet connection to provide channel listings? The conflicting reading of this only further confuses Stone as to what is and what is not allowed and what is classified as an internet capable device.

To further argue this point, condition five allows the probation office

to search Stone's residence to "include the search of computers". If Stone is not allowed to have a computer, which is by definition an internet capable device, how can the probation officer search it? Due process requires that the District Court give defendants fair warning by crafting conditions that are understandable. See United States v Fontaine, 697 F. 3d 221, 226 (3rd Cir. 2012). Stone simply cannot follow these conditions because he cannot tell what is allowed and what is forbidden.

### B. The conditions are more restrictive than necessary.

Section 3583(a) allows the District Court to impose a term of supervised release with conditions, but does not give them unfettered discretion to impose whatever the court would like to impose. When a special condition is impsoed, it may not deprive the defendant of more liberty "than is reasonably necessary" to deter crime, protect the public, and rehabilitate the defendant. 18 U.S.C. § 3583(d)(2); see id. § 3553(a). The same is true when District Courts alter conditions of supervised release. Id. § 3583(e)(2).

A defendant's conduct should inform the tailoring for his conditions. For instance, a tax fraudster may be forbidden to open new lines of credit without approval. United States v Bickart, 825 F. 3d 832, 840 (7th Cir. 2016). A child molester may be forbidden to linger near places where children congregate. United States v Zobel, 696 F. 3d 558, 575 (6th Cir. 2012). And a child-pornography collector may be forbidden to possess pornography or visit pornographic websites. See United States v Freeman, 316 F. 3d 386, 392 (3d Cir. 2003). So internet bans and restrictions have a role in protecting the public from sexual predators.

Yet, internet bans are "draconian" even when they have been upheld. In order to gauge whether an internet or computer restriction is more restrictive than necessary, there are three, sometimes four factors, which courts consider: the restriction's length, its coverage, and "the defendant's underlying conduct"

as well as at times the proportion of the supervised-release restriction to the total restriction period (including prison). In Stone's case, the fourth prong cannot be relied on due to the fact that Stone's supervised release term is for life.

An analysis must be fact specific and cannot simply be tallied. In addition, one factor cannot predominate over another. In Stone's case, the length and coverage of the computer ban and internet restrictions are excessive and not tailored to his conduct.

First, we look at the length. A "lifetime cybernetic banishment" cannot be upheld. In fact, no circuit has ever upheld this. Although numerous courts have allowed length restrictions, the record in this case cannot show why a full lifetime ban is the least restrictive means necessary. Courts have trouble "imagin[ing] how [a defendant] could function in modern society given [a] lifetime ban" on computer use. See Voelker, at 148. Still, "[t]he forces and directions of the Internet are so new, so protean, and so far reaching" that any restrictions imposed today "might be obsolete tomorrow". Packingham v North Carolina, 137 S. Ct. 1730, 1736, 198 L. Ed. 2d 273 (2017). So the lifetime duration of the blanket ban is presumptively excessive.

Second, we turn to the scope of the restriction. In this case, the computer and internet bans sweep too broadly. They are the "antithesis of [the] 'narrowly tailored' sanction[s]" that are required, Voelker at 145. While several restrictive bans have been upheld in this circuit, this ban cannot as it does not allow Stone to possess without his probation officer's approval, a computer, or even a cellphone, Blu-Ray player or other devices that **might** be able to access the internet. These limitations prevent Stone from doing everyday tasks like preparing a resume or calling a friend to ask for a ride. None of these activities put the public at risk. So the computer and communications-device ban is too

broad.

The internet ban fares little better. It prevents Stone from accessing anything on the internet-even websites that are unrelated to his crime. While the District Court could possibly conclude that there was some limited tailoring (if one reads the contradictory conditions as adding up to less than a blanket ban), it is still excessive. While allowing the probation office to permit Stone's access to the internet, it is still not reasonably tailored specifically to Stone.

There is no guidance by the court on how the probation office should enforce this restriction. The goal of restricting Stone's internet use is to protect the public by prohibiting Stone from accessing child pornography or communicating with minors. The District Court must tailor its restrictions to that end.

There are millions of websites that are legal that Stone will probably never encounter a child. These include Google Maps, Amazon, the Affordable Care Act's Health Insurance Marketplace or even this court's own website. While the District Court does not have to list all the websites that Stone can visit, it would be enough to give the probation office some type of categories of websites or a guiding principle that would allow Stone to access certain websites.

The third prong is the conduct. Stone used the internet to send child pornography online. According to the government, this was an "aggravating case" because it involved sending the explicit images to a minor. The District Court is supposed to tailor the special conditions to protect the public from similar crimes. The tailoring is inadequate here.

Even though Stone used the internet to send illegal images, Stone's bans are not tailored to his conduct. They apply broadly to many internet and computer uses that have nothing to do with children. The District Court must sculpt Stone's restrictions to his conduct. Any restriction it imposes must

aim to deter future crimes, protect the public, or rehabilitate Stone. And, in doing so, the District Court must find facts so that if appellate review is necessary, the higher courts can determine if the restrictions are informed by Stone's conduct and directed towards these goals.

It is almost certainly appropriate to prevent Stone from using social media, chat rooms, peer-to-peer file sharing services, and any site where he could interact with a child. On the other hand, it may not be appropriate to restrict his access to websites where he is unlikely to encounter a child.

But, by simply looking at the record, there is no reason that Stone should not be able to do everyday tasks that have migrated to the internet, like shopping or searching for a job or looking for housing. The same is true for his use of websites conveying information like news, maps, traffic, or weather. Absent specific factual findings, it cannot be said that forbidding Stone from writing a novel or listening to music on his computer makes the public any safer.

In crafting Stone's restrictions, the court should also consider the availability and efficacy of filtering and monitoring software. Special conditions should involve "no greater deprivation of liberty than is reasonably necessary" for its ends. 18 U.S.C. § 3583(d)(2). So if software or another measure can achieve the goals of supervised release, then that is preferable to an outright band. In any event, the court must create enough of a record to ground its findings for potential future review. The court should also consider whether Stone be allowed a smartphone with monitoring software installed. Along the same lines, many other devices are connected to the internet, ranging from gaming devices to fitness trackers to smart watches.

### C. The conditions raise First Amendment concerns.

Section 3583's tailoring requirement reflects constitutional concerns. Conditions of supervised release may not restrict more liberty than is reasonably

necessary, including constitutional liberty. So district courts must "consider the First Amendment implications" of their conditions of supervised release. Voelker, 489 F. 3d at 150. Conditions that restrict "fundamental rights must be 'narrowly tailored and . . . directly related to deterring [the defendant] and protecting the public.'" United States v Loy, 237 F. 3d 251, 256 (3d Cir. 2001)(quoting United States v Crandon, 173 F. 3d 122, 128 (3d Cir. 1999)). And a condition is not "'narrowly tailored' if it restricts First Amendment freedoms without resulting benefit to public safety."

With the recent developments of COVID-19 (coronavirus), many institutions have gone to online only settings. Every school in the State of Arkansas is now doing online courses. This includes primary, secondary, and postsecondary. However, one of the biggest concerns is with religion. Numerous churches have now gone to online only services to "protect the public". Yet, with no internet access, Stone would not be able to practice his religion in violation of the First Amendment.

In Packingham, the Supreme Court struck down a North Carolina law banning sex offenders from using social media websites. Packingham, 137 S. Ct. at 1738. While Packingham did not apply to people on supervised release, it is a good case for courts to look to for guidance on how Packingham could assist them in the shaping of supervised release conditions.

Defendants on supervised release enjoy less freedom than those who have finished serving their sentences. See United States v Knights, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001). But, as been previously noted, these restrictions must be tailored to deterring crime, protecting the public, or rehabilitating the defendant. Under Packingham, blanket internet restrictions will rarely be tailored enough to pass constitutional muster.

As compared to Packingham, this ban fails. They suffer from the same

"fatal problem" as North Carolina's restrictions on using social media. Packingham, 137 S. Ct. at 1741 (Alito, J., concurring). Their "wide sweep precludes access to a large number of websites that are most unlikely to facilitate the commission of a sex crime against a child." Id. So, the District Court must also take care not to restrict Stone's First Amendment rights more than is reasonably necessary or appropriate to protect the public.

### IV. Conclussion

While the court may feel that Stone poses a danger to children, the District Court should, limit his liberty accordingly. But, his supervised release must be tailored to the danger he poses. Stone's current conditions fail that test. They contradict one another. They also sweep too broadly, preventing him from reading the news or shopping online. And they limit his First Amendment freedoms beyond what is reasonably necessary or appropriate. They are not reasonably tailored to further the goals of supervised release, especially protecting the public.

Therefore, Stone prays that this honorable court will consider his argument and modify his conditions of supervised release to appropriate reflect the requirements of 18 U.S.C. §§ 3553 and 3583. In addition, Stone prays that if this court order the government to respond, that Stone be allowed to respond with a counter argument prior to this court issuing its final order on this motion.

Respectfully submitted this 23rd day of March, 2020.

Jacob Logan Stone
Register Number 09849-010
MCFP Springfield
PO Box 4000
Springfield, MO 65801

-9-

Jacob Stone 09849-010

Medical Center for Federal Prisoners
P.O. Box 4000
Springfield, Missouri 65801-4000



Clerk of the Court
U.S. District Court
30 S. Sixth Street
Room 1038
Fort Smith, AR 72901

72901-243763