IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF ARKANSAS

FORT SMITH DIVISION

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Jun 10, 2020
OFFICE OF THE CLERK

JACOB LOGAN STONE, PETITIONER

VERSUS

CASE NO. 2:09-CR-20074-PKH

UNITED STATES OF AMERICA, RESPONDENT

**EMERGENCY MOTION FOR REDUCTION IN SENTENCE UNDER THE AUTHORITY OF 18 U.S.C. 3582(c)(1)(A)(i) DUE TO "EXTRAORDINARY OR COMPELLING REASONS" IN RESPONSE TO THE CORONAVIRUS PANDEMIC**

Comes now, Jacob Logan Stone, pro se Petitioner ("Stone") requesting that this court grant him time served on his sentence and immediate release from his imprisonment due to his extremely high risk of contracting and spreading the COVID-19 virus. In support of his request, Stone explains his reasoning.

**COVID-19 BACKGROUND**

1

In December 2019, scientists in Wuhan Province, China, began to see an increase of hospitalizations with pneumonia like systems of an unknown origin. It was discovered these symptoms were caused by a virus from the coronavirus family, similar to that of SARS or MERS. In Early 2020, the World Health Organization officially named the new virus COVID-19. Only a few months into 2020, the virus began to make its way to the United States and has exploded to over 1,000,000 cases and tens of thousands of deaths in the United States alone.

COVID-19 is a virus that attacks the ACE2 receptor protein. In the standard innate immune defense, the body releases "proteins called interferons that interfere with the virus's ability to replicate[.]"..."The innate immune response is behind many of the symptoms you experience when you're sick."..."A suppressed immune system can result in a weaker initial interferon response or a delayed antibody response, allowing the virus to spread from cell to cell relatively unchecked." (See https://elemental.medium.com/this-is-how-your-immune-system-reacts-to-coronavirus-cbf5271e530e. Last accessed May 8, 2020).

According to the Center for Disease Control ("CDC"), those at high-risk for severe illness from COVID-19 [include in part] people who live in a nursing home or long-term care facility [such as a prison medical center], people of all ages with underlying medical conditions, particularly if not well-controlled, including: people with chronic lung disease or moderate to severe asthma, people who have serious heart conditions [including hypertension], as well as people who are immunocompromised...[derived from]...prolonged use of corticosteroids and other immune weakening medications. (See "People Who

Are at a Higher Risk for Severe Illness" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Last Accessed May 7, 2020).

### STONE'S MEDICAL HISTORY

According to the Federal Bureau of Prisons "Health Problems" printout, Stone suffers from numerous high-risk illnesses that are either affected by or exacerbated by COVID-19. These include hypertension, asthma, and eczema (atopic dermatitis), as well as previous problems such as polycythemia vera, acute upper respiratory infections, bacterial pneumonia and radiation sickness. (See attachment #1).

Stone is currently prescribed numerous medications for his health problems including Amlodipine for his hypertension, Albuterol for his asthma, as well as Triamcinolone and Desonide for his dermatitis. While the court may be familiar with hypertension and asthma, Stone would like to share a few details about polycythemia vera and eczema.

"Polycythemia vera is a rare, chronic blood cancer in which your body makes too many blood cells, which can lead to thicker blood flow, and an increased risk of blood clots and other serious complications." (https://www.takeactionpv.com. Last Accessed April 6, 2020).

"Eczema, or atopic dermatitis is an immunological disease, which means it involves the immune system. With atopic dermatitis, your immune system is highly sensitive."

(https://www.eczemaexposed.com/understanding-eczema. Last Accessed April 6, 2020).

## ANALYSIS

Stone believes that his polycythemia came from his prolonged use of anabolic steroids from 2004-2007. During that time, Stone discovered a website called the "Steroid Superboard" in which anabolic steroid advocates could communicate and share workout and drug tips, as well as buy and sell steroids on the black market. During that same time period, Stone, along with another individual, won a contest to design labels for the website owner for his products in exchange for providing free steroids to Stone and the other individual. Stone began to "cycle" on anabolic steroids including giving himself intramuscular injections of such drugs as testosterone propionate, testosterone decanoate, testosterone enanthate, nandrolone decanoate and several others, usually multiple times per week.

According to a study done by the Department of Rheumatic and Immunologic Disease and the Cleveland Clinic Foundation, they found that "serum immunoglobin levels, in particular IgA, were significantly (P less than 0.017) lower in the steroid using group. . . .These studies indicate that [in part] anabolic-androgenic steroid ("AAS") use as practiced by contemporary athletes is a potent modulator of immune responsiveness[.]" (See "The Effect of Anabolic Steroids and Strength Training". Medical Science Sports Exercise. 1989 Aug; 21(4): 386-92.

Other studies have shown that "supraphysiologic doses of AAS with an intact steroid nucleus are immunosuppressive" and that "[s]everal common AAS have been shown to adversely influence lymphocyte differentiation and proliferation, [as well as] antibody production." (See "Anabolic Androgenic Steroids Effects on the Immune System: A Review" by Sonya Marshall-Gradisnik, et al. Published Online January 31, 2009. https://doi.org/10.2478/s11535-008-0058-x. Last Accessed May 8, 2020).

In another study, it was noted that "[a]nimal models indicate that anabolic steroids suppress the immune system, which could worsen infections." (See "Anabolic Steroid Effects on Immune Function: Differences Between Anaolgues" by Charles L. Mendenhall, et al. The Journal of Steroid Biochemistry and Molecular Biology. Volume 37, Issue 1, September 1990, Pages 71-76).

In addition, the prolonged use of various types of steroids can cause digestion issues as well. In 2017, Stone underwent a Nissan Fundoplication to correct gastrointestinal problems caused by indigestion. Stone also showed Barrett's changes that tested negative for cancer though. But, the use of steroids could have caused this problem as well.

There are several other reasons why Stone is at a higher risk for infection that the majority of individuals in society. First, Stone's prolonged use of both anabolic steroids and corticosteroids have been proven to weaken the immune system. Second, Stone is currently located at a prison medical center, which basically is a prison nursing home. Third, Stone suffers from hypertension and asthma, two illnesses that are made worse from COVID-19. Finally, while the majority of working inmates at the

prison Stone is currently located at, the United States Medical Center for Federal Prisoners, have been "furloughed", Stone has been required to keep working.

Stone is employed in the food service warehouse and handles multiple daily deliveries from outside vendors and other prison facilities. In fact, in a recent lawsuit filed against FMC Devens, another Bureau of Prisons medical center, it stated in part that "prison medical centers [are] a potential powder keg of infection and death from COVID-19, to an even greater degree than nursing homes, cruise ships, and other prisons, sites of some of the most intense clusters of mortality in . . . the United States, and elsewhere in the world." (Citation unknown).

In addition to his job in the warehouse, Stone has assisted with the daily delivery of meals to each housing unit for at least the last 30 days, therefore increasing his risk of infection, as well as the risk of spreading infection to others. In another case filed in the Eastern District of New York, the BOP admitted those inmates [working] in a "high-contact role such as food service" are at a higher risk for infection than those in the general population. (Citation unknown).

The United States Medical Center for Federal Prisoners ("MCFP Springfield") is one of several prison medical centers operated by the Federal Bureau of Prisons. At MCFP Springfield, the population is split between care-level 3 and 4 inmates who are unable to function fully with daily activities and the work cadre units that assist these individuals. All of the inmates share communal facilities such as a dining hall, chapel, recreation, commissary, and so forth.

At MCFP Springfield, there are 17 housing units. The work cadre consists of three of those units. MCFP Springfield was built in the 1930s and is one of the oldest prisons still being used by the BOP. Over the years, the facilities have been upgraded numerous times to include things such as air-conditioning. Out of the three cadre housing units, Stone's living unit and one other unit are the only two units without air-conditioning. Temperatures in the summertime reach 90+ degrees despite fans in the unit.

In a recent article published in the Times Record newspaper discussing gyms reopening in Arkansas, it discussed exercising and sweating. "This is because exercise causes an individual to breathe heavier and sweat, both of which cause COVID-19 to spread more easily between people." ("Gyms to reopen May 4" by A. Drew Smith, Times Record. May 1, 2020. A1). Prison facilities already are overcrowded and despite the BOP's multi-phase plan to combat COVID-19, inmates are still being affected. This includes being forced to sleep less than six feet apart and forcing inmates to work out in small areas, such as hallways, and therefore sweat on people walking by, due to the lack of outside recreation.

### STATISTICAL INFORMATION

From April 21, 2020 until May 7, 2020, the number of cases of COVID-19 confirmed positive amongst inmates in the BOP rose from 540 to 2,646, an increase of 390% in just 16 days and the death rate doubled from 22 to 44 in the same time period. Some days have seen individual growth rates jump as high as 30%. In fact, approximately 70% of the cases in the BOP are those located at care level 3 or 4 medical facilities. (See https://www.bop.gov/coronavirus. Last Accessed May 7, 2020).

During that same time period, the number of cases in the United States grew from 772,524 to 1,263,224, a 63.5% increase. The BOP's growth rate was more than six times higher than that of the general population. (See https://www.worldmeters.info/coronavirus/country/us. Last accessed May 7, 2020. Also https://www.medicaleconomics.com/news/coronavirus-case-numbers-united-states-april-21-update. Last accessed May 8, 2020).

### EXHAUSTION OF REMEDIES

Under 18 USC 3582(c)(1)(A)(i), "[t]he court may not modify a term of imprisonment once it has been imposed except that in any case the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment..., after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction[.]"

On April 8, 2020, Stone submitted a request for compassionate release to the warden at MCFP Springfield. As of the date of this motion, the Director of the Bureau of Prisons has failed to bring a motion to this court on defendant's behalf. While Stone admits that he has not fully exhausted all his administrative rights, the statute specifically says after a "lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility[.]" It has now been over 30 days since the warden received Stone's request and since exhaustion would require at least another 70 days minimum (see 28 CFR 542.18) after Stone received his BP-9 denial from the warden, the 30-day lapse in the BOP's filing of the motion is the earlier of the two exceptions and thus Stone falls under this category.

In addition to that, courts around the country have ruled that exhaustion is futile when the defendant cannot fully exhaust his remedies. Stone's current release date is August 28, 2020. While the BOP has 70 days minimum to answer Stone's BP-10 and BP-11 appeals, there is a high likelihood that both the regional office and the central office will request 20 day extensions as allowed by policy due to the overwhelming number of compassionate release requests currently pending before it. This therefore realistically gives Stone 110 days to exhaust his remedies. This does not include delays due to mailing responses and appeals, as well as delays to file in the BOP's SENTRY computer system. As of May 12, 2020, Stone has 108 days left to serve and therefore exhaustion would be futile.

### FACTORS TO CONSIDER UNDER 18 USC 3553(a)

Stone was convicted and sentenced in 2010 after pleading guilty to one count of Distribution of Visual Depictions Involving the Sexual Exploitation of a Minor, in violation of 18 USC 2252(a)(2) and (b)(1) to 150 months imprisonment and lifetime supervised release. Stone has been incarcerated since December 10, 2009. As mentioned in the previous paragraph, his release date is presently August 28 of this year.

At sentencing and throughout his incarceration, Stone has accepted responsibility for his actions and has realized the fact that his crime was a serious one that, although didn't harm any children directly, the indirect harm caused by the viewing and sharing of illegal images and videos has continued to haunt them and will for the remainder of their lives. Their victimization was a traumatic experience that can never be undone. In Stone's case, he has already taken several courses while incarcerated to address not just his criminal thinking behavior, but his addictive behavior as well into drugs and alcohol, as well as pornography.

Stone has completed over 2,000 hours of programming while in the BOP and has even completed his associate's degree through correspondence studies, a task that altogether took him nearly 14 years to complete after attending college on and off. Stone has taught numerous classes at MCFP Springfield on health and nutrition, served as a law library clerk and legal assistant, previously published a re-entry blog aimed at helping sex offenders upon their release and more.

The court must look at numerous factors under 3553(a) when modifying the sentence, but the two most important ones are those that deal with protecting the public and minimizing the severity of the offense. Stone has served nearly 97% of his sentence already. He will be going home no matter what in less than four months. By releasing him now, there is hardly any argument that the severity of the offense will be not be minimized by such a brief reduction in sentence. Stone also has a low risk of recidivism based on the BOP's PATTERN assessment as well.

There have been two recent decisions involving sex offenders being released from imprisonment early due to COVID-19. In *United States v Sawicz*, the defendant, convicted on child pornography charges and a supervised release violation, suffered from hypertension and was only months away from his home confinement eligibility date. "[T]he court acknowledged that [child pornography] is a serious charge and that [the defendant] has already violated one term of supervised release. However, that do[es] not justify keeping the defendant in prison amidst an outbreak of a potentially deadly virus to which he is particularly vulnerable." (*United States v Sawicz*, 08-cr-287 (EDNY Apr. 10, 2020). Stone's home confinement eligibility date has already passed months ago.

In the second case, in *United States v Curtis*, a defendant with multiple life sentences on child prostitution and pornography charges, was released early from MCFP Springfield due to his medical conditions and his rehabilitation efforts made while incarcerated. (See *United States v Curtis*, No. 03-533 (BAH), DDC Apr. 22, 2020). Stone in fact taught a good number of courses mentioned in that opinion directly to Mr. Curtis while he was at MCFP Springfield and even assisted him numerous times with his compassionate relief motions.

Second, upon his sentencing, the court notated in the Statement of Reasons (ECF No. 20) that the sentence imposed was not imposed to protect the public from further crimes of the defendant. In it, Judge Dawson felt that Stone had made poor choices and was not truly a monster, but did not some help. In fact, the closing of the sentencing stated that he would like to see Stone back as a member of society. Thus, by reducing Stone's sentence by a few months would not truly affect any factors under 3553(a).

**CONCLUSION**

Courts across the country have ruled that COVID-19 is an extraordinary and compelling reason for a reduction and sentence and Stone's case is no different. His health problems, his communal living in a prison medical center, and the continued spread of the virus throughout the BOP puts both Stone and those around him at an increased risk of infection and possibly death. Therefore, Stone requests the following relief:

1. Stone be granted time served on imprisonment portion of the sentence imposed in this case;

2. Stone be immediately released from the custody of the Bureau of Prisons;

3. Stone not be required to quarantine in the Bureau of Prisons, but rather at his place of residence, as approved by the U.S. Probation Office on November 5, 2019, for 14 days upon his release from imprisonment;

4. Stone only stop prior to his arrival at his residence be at the Franklin County Sheriff's Office in Ozark, Arkansas where he will register as a sex offender, and only after discussing the logistics with the Franklin County Sheriff's Office and while taking proper precautions;

5. Any other relief that this court find proper.

Respectfully submitted this 3rd day of June, 2020.

*Jacob Logan Stone* (signature)

Jacob Logan Stone

Register No. 09849-010

MCFP Springfield

PO Box 4000

Springfield, MO 65801

## CERTIFICATE OF SERVICE

I, Jacob Logan Stone, hereby certify under penalty of perjury that a copy of this REDUCTION IN SENTENCE motion was sent, postage prepaid to the United States Attorney's Office, 414 Parker Avenue, Fort Smith, AR 72901 on the 3rd day of June, 2020.

Previously sent.
JS

*Jacob Logan Stone* (signature)

Jacob Logan Stone