IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 2:09CR20074-001 |
| v. ) | |
| ) | |
| ) | |
| JACOB LOGAN STONE ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO (1) DEFENDANT'S EMERGENCY MOTION FOR REDUCTION IN SENTENCE UNDER THE AUTHORITY OF 18 U.S.C. § 3582(c)(1)(A)(i) DUE TO EXTRAORDINARY AND COMPELLING REASONS IN RESPONSE TO THE CORONAVIRUS PANDEMIC (Doc. 58); (2) DEFENDANT'S ADDITIONAL INFORMATION IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE (Doc. 51); and (3) DEFENDANT'S SECOND SUPPLEMENT TO MOTION FOR REDUCTION OF SENTENCE (Doc. 59)**

Comes now the United States of America, by and through David Clay Fowlkes, Acting United States Attorney for the Western District of Arkansas, and states its response in opposition to the following pleadings: Defendant's Emergency Motion for Reduction in Sentence Under the Authority of 18 U.S.C. § 3582(C)(1)(A)(i) Due to "Extraordinary or Compelling Reasons" In Response to the Coronavirus Pandemic (Doc. 58); Defendant's Additional Information in Support of Motion for Compassionate Release (Doc. 51); and Defendant's Second Supplement to Motion for Reduction in Sentence (Doc. 59).

In his pleadings, the Defendant, Jacob Logan Stone, requests the Court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).[1] Under that provision, a court "may" reduce a defendant's sentence if the court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," finds that "extraordinary and compelling reasons

---

[1] Stone's initial motion for a sentencing reduction was missing four pages. (Doc. 50). Stone re-

1

warrant such a reduction," and if the court also finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  Stone asserts that his current health conditions of hypertension, asthma, and eczema, along with his previous health conditions, which include polycythemia vera, warrant his immediate release in light of the COVID-19 pandemic.

As explained below, Stone's motion should be denied for any of the following reasons. First, Stone has not established "extraordinary and compelling reason warranting release," as required by § 3582(c)(1)(A)(i).  Second, Stone cannot establish that he is not a danger to the community, as required by U.S.S.G. 1B1.13(2).  Finally, Stone fails to show that his release is warranted under the factors set forth at 18 U.S.C. § 3553(a).

## I. Factual and Procedural Background

On February 4, 2010, Stone pled guilty to one count of knowingly distributing images of a minor engaged in sexually explicit conduct in interstate and foreign commerce, by computer, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1).  (Doc. 15).  The presentence investigation report revealed that Stone possessed "in excess of 700 still images and 39 videos of minors engaging in sexually explicit conduct," including numerous images and videos of adults perpetrating sexual acts upon minors.  (Doc. 18 (hereinafter, "PSR"), ¶¶ 14, 17).  Stone admitted to "fantasizing himself with the children in the pictures and videos."  (PSR, ¶ 13).  Moreover, less than two months prior to his arrest in this case, Stone, then age 24, emailed child pornography to a 16-year-old with whom Stone was acquainted.  (PSR, ¶ 15).  Stone admitted that he had been obtaining child pornography "for years."  (PSR, ¶ 12).  In fact, Stone at age 17 was arrested for

---

filed a complete version of his original motion, which was entered as Doc. 58.

possession of child pornography and was subsequently placed on juvenile probation in Arkansas state court. (PSR, ¶ 34).

Stone's base offense level in this case was 22. (PSR, ¶ 20). However, Stone was assessed several upward adjustments to his base offense level, including the following. Stone was assessed a two-level upward adjustment because the child pornography he possessed involved minors under the age of 12. (PSR, ¶ 21). He was assessed a five-level upward adjustment because he distributed child pornography to a minor. (PSR, ¶ 22). He was assessed a four-level upward adjustment because he possessed material that portrayed sadistic or masochistic conduct or otherwise depicted violence. (PSR, ¶ 23). Because his offense involved 600 or more images, Stone was also assessed a five-level upward adjustment, (PSR, ¶ 25), the highest adjustment under that particular guideline. *See*, U.S.S.G. § 2G2.2(b)(7)(D) (Nov. 1, 2009). Stone's adjusted offense level was ultimately determined to be 40. (PSR, ¶ 29).

After a three-level reduction for acceptance of responsibility (PSR, ¶ 30), Stone's total offense level was 37. (PSR, ¶ 31). With a criminal history category of I, Stone's sentencing range was 210 to 262 months imprisonment, but because his statutory maximum was 20 years, the upper end of his guidelines range was lowered to 240 months. (PSR, ¶ 52). At Stone's sentencing hearing in 2010, the Court[2] varied downward from the guidelines range and imposed a sentence of 150 months imprisonment, followed by a lifetime term of supervised release. (Doc. 19). Stone was 25 years old at the time of sentencing. He is now 35 years old and has a projected release date of August 28, 2020.

---

[2] Stone was sentenced by the Honorable Robert T. Dawson, District Judge for the Western

**II.     Argument**

As noted above, Stone seeks release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and it is his burden to show that release is appropriate. *United States v. Johnson*, No. 4:00-cr-40023, 2020 WL 1434367, at *1 (W.D. Ark. Mar. 24, 2020) (citations omitted). Under § 3582(c)(1)(A)(i), a court "may" reduce a defendant's sentence if the court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," finds that "extraordinary and compelling reasons warrant such a reduction," and if the court also finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).[3]

The Sentencing Commission's policy statement for 18 U.S.C. § 3582(c)(1)(A) appears at U.S.S.G. § 1B1.13.[4] In Application Note 1, the policy statement describes the circumstances that constitute "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) as follows:

(A) Medical Condition of the Defendant.

(i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not

---

District of Arkansas.

[3]     Prior to the First Step Act of 2018, only the Director of the Bureau of Prisons could bring motions for sentencing reductions on behalf of inmates under § 3582(c)(1)(A). Section 603 of the First Step Act of 2018 amended § 3582(c)(1)(A) by allowing federal inmates to file such motions directly "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). For purposes of its response in this case, the Government does not contest that Stone is eligible to file a § 3582(c)(1)(A) motion directly with the Court.

[4]     Congress directed the Sentencing Commission to describe what circumstances would authorize a court to order release under the statute. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." The statute also states that "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

>> required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant
>
>> (i) is at least 65 years old;
>>
>> (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and
>>
>> (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.--
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

Additionally, § 1B1.13(2) prohibits a court from reducing a defendant's sentence unless the court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

### A. Stone's health conditions do not constitute extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

Stone asserts that his current health conditions of hypertension, asthma, and eczema, along with his previous health conditions, which include polycythemia vera, constitute extraordinary and compelling reasons warranting his immediate release in light of the COVID-19 pandemic. (Doc. 58, pp. 3-4). But Stone fails to allege any condition or circumstance that would ordinarily constitute an extraordinary and compelling circumstance under § 1B1.13.

Moreover, as part of the Bureau of Prison's assessment of Stone's administrative request for a reduction of sentence under § 3582(c)(1)(A)(i), Stone's medical records and current medical conditions were reviewed by a physician. In a Special Progress Note dated April 9, 2020, the reviewing physician wrote that Stone "has no debilitating condition in his medical history." [5] The physician noted that Stone "does have mild intermittent asthma," for which he "self-carries [an inhaler] to use as needed for any shortness of breath/wheezing." The physician further observed that Stone's "reactive airways might make him risk for admission if infected with Corona Virus, but he is housed in a facility with no staff or patient diagnoses in a state with one of the lowest death rates."[6] Thus, the physician opined that "there is no evidence that release would improve his risk for infection or a bad outcome." The physician concluded that Stone "has no problems with activities of daily living" and "has an average life-expectancy." Additionally, Stone's medical records dated April 28, 2020, reveal that Stone's hypertension is "under good control," and his mild intermittent asthma is "well controlled" by his inhaler.[7]

---

[5] See, Exhibit A, filed under seal.
[6] As Stone notes in his counseled supplement to his motion for a reduction in sentence, as of June 15, 2020, there is now one confirmed COVID-19 diagnosis of an inmate at the facility where Stone is confined. (Doc. 59, p. 8).
[7] See, Exhibit B, filed under seal.

Finally, as indicated in his primary motion for sentence reduction, Stone's polycythemia vera[8] has been in remission since 2015. (Doc. 58, pp. 3, 12).

In assessing motions under § 3582(c)(1)(A)(i), courts have recognized that "high blood pressure [is] a condition which does not place [an inmate] in a high-risk category for contracting COVID-19." *United States v. Binraymond*, No. 2:19-cr-196, 2020 WL 2110577, at *2 (S.D. Ohio May 4, 2020); *see also*, *United States v. Gold*, No. 15-CR-330, 2020 WL 2197839, at * 2 (N.D. Ill. May 6, 2020) (denying sentence reduction to 65-year-old defendant with pre-emphysema, high blood pressure, and high cholesterol, and finding that his conditions that "are common and do not appear to be among those the [Center for Disease Control] has identified as significant risk factors" for contracting COVID-19). Likewise, a 63-year-old inmate with asthma, high blood pressure, high cholesterol, and who is currently taking medications that weaken his immune system, failed to establish extraordinary and compelling circumstances under § 3582(c)(1)(A)(i), "even in the context of the ongoing public health crisis." *United States v. Godofsky*, 2020 WL 2188047, at *2 (E.D. Ky. May 6, 2020). Indeed, one court has determined that a recent diagnosis of polycythemia vera coupled with a positive test for COVID-19 were insufficient grounds to justify release under § 3582(c)(1)(A)(i), especially considering the gravity of the defendant's offense. *United States v. Weiskopf*, No. 19-CR-6093, 2020 WL 3248383, at *2 (W.D.N.Y. June 16, 2020).

Finally, the response by the Bureau of Prisons to the COVID-19 pandemic militates against a finding that Stone has established extraordinary and compelling reasons warranting release. That response includes the following measures: suspending social visits and increasing

---

[8] "Polycythemia vera is a slow-growing blood cancer in which the bone marrow makes too many red blood cells. These excess cells thicken blood, slowing its flow. They also cause complications, such as blood clots, which can lead to a heart attack or stroke." *Higgins v. Saul*,

7

inmate phone time to 500 minutes; suspending inmate movement with limited exceptions; suspending legal visits; suspending staff travel; advanced health screening for contractors performing essential services; suspending volunteer visits; enhanced health screenings for staff; quarantining all newly-arriving inmates; limiting inmate movement except for limited purpose; quarantining asymptomatic inmates for a minimum of 14 days or until cleared by medical staff; and isolating symptomatic inmates until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.[9]  These measures, which include social distancing and quarantine practices, are designed to mitigate the risks of COVID-19 transmission at all BOP facilities, including the one where Stone is confined.  Thus, the BOP's response to the COVID-19 pandemic undermines Stone's asserted grounds for immediate release.  For all of the foregoing reasons, the Court should find that Stone has failed to establish extraordinary and compelling reasons warranting release under 18 U.S.C. § 3582(c)(1)(A)(i).

> **B.**     **Stone remains a danger to the community under U.S.S.G. § 1B1.13(2).**

As noted above, U.S.S.G. § 1B1.13(2) prohibits a court from reducing a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A) unless the court finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and

---

No. 18-01077, 2019 WL 7116356, at *1 n.2 (W.D. Ark. Dec. 23, 2019).
[9] *See*, https://www.bop.gov/coronavirus/covid19_status.jsp; *and* https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp.

record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4).

Consideration of these factors—which are not affected by COVID-19—should not allow the Court to conclude that Stone is not a danger to the safety of any other person or the community. As described above, Stone's addiction to child pornography was extensive in terms of length of time and amount of material, and his offense involved material that portrayed sadistic or masochistic conduct or otherwise depicted violence. Moreover, Stone sent child pornography to a person he knew to be minor, a step that one can infer to be an act of grooming the minor for sexual conduct. Finally, when considered with the fact that Stone is not in any way physically or mentally debilitated, the Court's decision at sentencing to impose a lifetime term of supervised release indicates a recognition that Stone, even after his eventual release, will continue to pose a danger to the community. For these reasons, the Court should find that Stone remains a danger to the community and deny his request for that reason.

### C. Stone's request should be denied under the applicable § 3553(a) factors.

Even if Stone had established extraordinary and compelling reasons warranting release, he has failed to establish that his release is warranted under the § 3553(a) factors. *See, e.g., United States v. Chambliss*, 948 F.3d 691, 693-694 (5th Cir. 2020) (although defendant's terminal illness of advanced-stage liver cancer qualified as an "extraordinary and compelling reason" warranting release under § 3582(c)(1)(A)(i), consideration of § 3553(a) factors justified denial of release); *see also*, *United States v. Kincaid,* 802 F. App'x 187, 188-89 (6th Cir. 2020) (unpublished) (although defendant's terminal diagnosis of metastatic liver cancer constituted an extraordinary and compelling reason warranting release under § 3582(c)(1)(A)(i), the district court's

discretionary application of the § 3553(a) factors justified denial of defendant's compassionate release motion). In Stone's case, consideration of the § 3553(a) factors warrants denial of his motion for release.[10]

After consideration of the § 3553(a) factors, the Court imposed a sentence of 150 months imprisonment, which was five years below the low end of the Guidelines range of 210 to 240 months. As described above, Stone possessed sadistic and masochistic images and videos of child pornography. He possessed well over the number of images to qualify for highest adjustment to his base offense level. Additionally, Stone's addiction to, and acquisition of, child pornography took place over several years. Moreover, Stone admitted to "fantasizing himself with the children in the pictures and videos" (PSR, ¶ 13), and he sent child pornography to a person he knew was a minor, a step that one can infer to be an act of grooming the minor for sexual conduct.

Although Stone has only short period of time left to serve, the sentence imposed on Stone reflected the seriousness of his offense, and the sentence was, and remains, both a just sentence and a sentence necessary to protect the public from Stone. In sum, the consideration of the §

---

[10] In his counseled supplemental pleading, Stone suggests that his confinement during the COVID-19 pandemic violates the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 59, p. 10). But even taking Stone's descriptions of his confinement as true, Stone has wholly failed to describe how the actions taken by prison officials in response to the pandemic constitute deliberate indifference to the risks posed by the COVID-19 pandemic, something Stone must establish in order to prove an Eighth Amendment claim. *Farmer v. Brennan*, 511 U.S. 825, 834-840 (1994) (describing "deliberate indifference" as akin to "subjective criminal recklessness"); *see also*, *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993) ("deliberate indifference" is a "highly culpable state of mind approaching actual intent"). Moreover, as a general rule, release from confinement is not a remedy for a violation of the Eighth Amendment. *See, e.g.*, *Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) ("If an inmate established that his medical treatment amounts to cruel and unusual punishment, the appropriate remedy would be to call for proper treatment,…release from custody is not an option."). For either of these reasons, his suggestion of an Eighth Amendment violation should be denied.

3553(a) factors that determined Stone's sentence apply with the same force now as then, and the Court should deny Stone's request for sentence reduction based on those factors.

WHEREFORE, for the foregoing reasons, the United States prays this Court deny Stone's motions for sentence reduction.

>Respectfully submitted,
>
>DAVID CLAY FOWLKES
>ACTING UNITED STATES ATTORNEY
>
>By: */s/ Lloyd V. Stone*
>Lloyd V. Stone[11]
>Assistant U.S. Attorney
>Arkansas Bar No. 98161
>414 Parker Avenue
>Fort Smith, AR 72901
>Telephone: (479) 783-5125
>E-Mail: van.stone@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send notification of such filing to:

James Pierce, attorney for the defendant, James_Piercce@fd.org

>*/s/ Lloyd V. Stone*
>Lloyd V. Stone
>Assistant U.S. Attorney

---

[11] The Assistant U.S. Attorney of record is not related to the Defendant, Jacob Stone.