UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                              No. 2:09-cr-20074

JACOB LOGAN STONE                                                     DEFENDANT

## OPINION AND ORDER

On May 21, 2020, Defendant Jacob Logan Stone filed a pro se motion (Doc. 50) for compassionate release and a brief (Doc. 51) in support of his motion.  On May 22, 2020, Assistant Federal Public Defender James Pierce was appointed to represent Stone for the limited purpose of representing him on his motion for compassionate release.  (Doc. 52).  Mr. Pierce filed two supplements (Docs 58 & 59) to Stone's pro se motion.[1]  The Government filed a response (Doc. 63) opposing compassionate release and filed documents (Doc. 64) containing some of Stone's medical information as sealed exhibits with leave of Court.  The Government separately obtained Stone's complete medical records from the Bureau of Prisons and provided those records by email to the Court and Mr. Pierce.  The Court has reviewed the parties' briefs, the final presentence investigation report, judgment, statement of reasons, and Stone's medical records.  After that review, the Court will GRANT the motion.

**I.      Background**

On February 9, 2009, Jacob Logan Stone was charged in a 15-count indictment with two counts of distribution of child pornography and thirteen counts of receiving child pornography, all in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).  On February 4, 2010, Stone pled guilty to one

---

[1] Stone's original motion was incomplete and missing four pages.  Though Document 58 is docketed as a supplement to the motion, it is the complete version of Stone's original motion.

1

count of distribution of child pornography. A presentence investigation report ("PSR") was prepared in anticipation of Stone's sentencing hearing. The PSR applied the United States Sentencing Guidelines to calculate Stone's advisory range of imprisonment (based on the offense of conviction and relevant conduct), which resulted in a recommended sentence of 210 to 240 months.[2] Stone received nearly every guideline enhancement typically applicable when a defendant uses a computer to distribute or receive child pornography. (Doc. 18, ¶¶ 21-25). These enhancements increased his base offense level from 22 to 40. (*Id.* at ¶¶ 21, 29). After an adjustment for acceptance of responsibility, Stone's total offense level was 37. (*Id.* at ¶ 31). Stone received one criminal history point for contributing to the delinquency of a minor, selling tobacco to a minor, and criminal trespass, placing him in a criminal history category I. (*Id.* at ¶¶ 37-38). Stone was also arrested as a juvenile for possession of child pornography and was placed on probation until his 18th birthday. (*Id.* at ¶ 34). At sentencing, the Court varied downward and imposed a term of imprisonment of 150 months followed by a term of supervised release of life. (Doc. 19). Stone is presently housed in MCFP Springfield.

Stone filed the instant motion for compassionate release following the COVID-19 global pandemic. Stone claims he is particularly susceptible to the COVID-19 virus due to certain medical conditions, including asthma, hypertension, and polycythemia vera.[3] The Government objects to release, arguing that Stone's medical conditions during this pandemic do not constitute

---

[2] Stone's initial advisory guideline range was 210 to 262 months, but because the statutory maximum term of imprisonment was 20 years, the guidelines were modified to 210 to 240 months.

[3] Polycythemia vera is a type of blood cancer which causes bone marrow to produce too many red blood cells. The excess cells thicken an individual's blood, slowing its flow, which can cause serious problems such as blood clots. *Polycythemia vera*, Mayo Clinic, (Jan. 23, 2020), https://www.mayoclinic.org/diseases-conditions/polycythemia-vera/symptoms-causes/syc-20355850#:~:text=Polycythemia%20vera%20(pol%2De%2D,problems%2C%20such%20as%20blood%20clots (last accessed June 22, 2020).

extraordinary and compelling reasons that would warrant release. The Government also argues the factors outlined in 18 U.S.C. § 3553(a) weigh in favor of denying Stone's motion. Stone has served approximately 10 years of his sentence and is scheduled for release in the normal course on August 28, 2020.

**II.     Analysis**

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, the Court may modify a defendant's term of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Thus, to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Stone must demonstrate the following: (1) that he has exhausted his administrative remedies; (2) that extraordinary and compelling reasons warrant a reduction of his sentence; and (3) that the sentencing factors outlined in section 3553(a) support release. *Id.* As a preliminary matter, it appears Stone petitioned the BOP to reduce his sentence before April 9, 2020, based on a debilitating medical condition. (Doc. 64-1). Stone filed this motion on May 21, well over 30 days after the Warden would have received that request. The Court therefore finds Stone exhausted his administrative remedies prior to filing this motion. The Court will address the remaining requirements in turn.

**A.     Extraordinary and Compelling Reasons for Release**

Stone argues that extraordinary and compelling reasons exist because his medical conditions make him particularly susceptible to COVID-19. Stone claims that he suffers from,

among other things, asthma, hypertension, polycythemia vera, and acute respiratory infections and argues these ailments make him especially vulnerable to the coronavirus. (Doc. 58, p. 3). The Government argues Stone's medical condition is not an extraordinary and compelling reason that warrants release because the physician who reviewed Stone's medical records determined "there is no evidence that release would improve his risk for infection or a bad outcome." (Doc. 63, p. 6). The physician noted Stone's hypertension and asthma were both under control and found he had no debilitating condition(s) in his medical history. The Government's argument overlooks the fact that the physician's evaluation appears to have been narrower than this Court's review. The physician reviewed Stone's file for a "debilitating condition" and determined that because his conditions are presently "under control", he is not a candidate for release. Asthma and hypertension are certainly not debilitating conditions that alone would warrant release under normal circumstances. However, the Centers for Disease Control and Prevention (CDC) consistently and unequivocally stated that these two ailments put an individual at higher risk for severe illness from COVID-19.[4] Though Stone's medical issues may be "under control" right now, these medical conditions put him at greater risk of complications if he contracts the coronavirus.

The Government also argues that the BOP's response to the COVID-19 pandemic warrants denial of Stone's motion. The Court has no doubt the measures imposed by the BOP are intended to slow the spread of COVID-19 within prisons. However, the pandemic has been running rampant in the United States for over three months and cases continue to spread at an alarming rate,

---

[4] *Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk .html (last accessed June 22, 2020).

especially in the prison systems.[5]  Though there is only one confirmed case in MCFP Springfield, the conditions of incarceration increase the likelihood of transmission of the virus.  *United States v. Rodriguez*, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) ("Detention facilities have even greater risk of infectious spread because of conditions of crowding, the proportion of vulnerable people detained, and often scant medical care.  People live in close quarters and are also subject to security measures which prohibit successful "social distancing" that is needed to effectively prevent the spread of COVID-19.  Toilets, sinks, and showers are shared, without disinfection between use.  Food preparation and food service is communal, with little opportunity for surface disinfection. The crowded conditions, in both sleeping areas and social areas, and the shared objects (bathrooms, sinks, etc.) will facilitate transmission." (citation omitted)).  The increased risk of transmission while incarcerated combined with Stone's health conditions are extraordinary and compelling circumstances warranting a reduction in his sentence.

Furthermore, Stone has served nearly his entire term of imprisonment and is two months away from his expected release date.  Requiring Stone to remain in prison for two more months makes a marginal difference to his punishment.  However, as the first wave of viral infection in this country has not yet passed and the number of infections continues to climb, it appears likely that two additional months of confinement will have a substantial impact on Stone's health.  That Stone has only two months remaining on his 150-month sentence (combined with his vulnerability to COVID) only strengthens the extraordinary and compelling reasons to reduce his punishment.  To the extent the Government believes Stone is a danger the community, the Court notes that Mr. Stone was sentenced to a lifetime term of supervised release, and has never known the Government

---

[5] As of the date of this order, the BOP has conducted 18,962 tests on inmates—6,243 returned positive, a rate of nearly 33.33%. *COVID-19 Inmate Test Information*, BOP, https://www.bop.gov/coronavirus/ (last accessed June 22, 2020).

to take the position at sentencing that the conditions imposed on defendants by supervised release provide no protection to the community. (Doc. 19).   The Court does not intend to modify Stone's term of supervised release at this time.  Stone will be under the supervision of the United States Probation Office immediately upon release, and the Court believes this supervision (along with the special conditions imposed during sentencing) will be sufficient to ensure Stone is not a danger to the community.

Though the Court believes extraordinary and compelling reasons exist in this case, it is inclined to note this case presents the exception, rather than the norm.  However compelling the reasons for reducing Stone's sentence might be, in the absence of a pandemic such as this, the spread of which is exacerbated among populations who are made to live in conditions like those faced by prisoners kept in BOP custody, the Court would be hard-pressed to find extraordinary circumstances exist.  However, taken together, the Court is satisfied Stone's health conditions, the high likelihood of transmission in prison, and Stone's proximity to his release date sufficiently constitute extraordinary and compelling reasons warranting a reduction in his sentence.

      **B.**      **Section 3553(a) Sentencing Factors**

The Court further finds the sentencing factors set forth in section 3553(a) support this conclusion.  Unlike the sentencing factor evaluation made at Stone's sentencing, this evaluation is made with the benefit of hindsight.  As mentioned above, Stone has served all but two months of his 150-month term of imprisonment.  Considering the term of imprisonment he has served already and his conduct during that time, requiring Stone to remain in prison for two more months would result in a sentence greater than necessary to comply with the purpose of any one 18 U.S.C. § 3553(a)(2) factor, let alone all of them.  The Court finds a modified sentence of time served is sufficiently punitive for Stone's actions and will strike an appropriate balance between his offense

conduct and the need to provide just punishment. For these reasons, the Court finds the sentencing factors under section 3553(a) support an order modifying Stone's sentence to time served.

Stone's motion will be granted. The Court will modify Stone's term of imprisonment to a term of time served but will not modify Stone's lifetime term of supervised release. The Probation Office advised the Court that it conducted a prerelease check on Stone's mother's residence in Ozark, Arkansas and determined this residence was acceptable for Stone's release. Stone is directed to self-quarantine at his mother's residence for fourteen days after his release from prison, to make every reasonable effort to practice strict social distancing, and to comply with any other requirements as deemed necessary by the United States Probation Office. Stone is further directed to immediately contact either the Ozark Police Department or the Franklin County Sheriff's Department (as directed by the Probation Office) for instructions on how to complete his sex offender registration.

### III.   Conclusion

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 50) for compassionate release is GRANTED. Jacob Logan Stone's sentence is reduced to a term of time served and he is to be released from MCFP Springfield immediately. An amended judgment will be entered separately.

IT IS SO ORDERED this 23rd day of June, 2020.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
U.S. DISTRICT JUDGE